I want to thank the court for reappointing me to such an interesting case. We appreciate your agreeing to take it. It's a pleasure, Judge. This is the second time this case has been before the court. We were here, Mr. Mott and I, last year. And several issues were remanded on sentencing, particularly restitution. The sole issue today concerns whether the district court erred by awarding, once again, $84,000 in attorney's fees under the Mandatory Restitution Act to this third party, Jordan Oil Company. And there are several, he was convicted of 18 counts. But as far as the restitution is concerned, there are only three counts. The court made this clear on 525 of the record. He was only going to consider the three bankruptcy fraud counts of conviction in awarding restitution. Those are counts 16, 17, and 19. And they concern two discrete false statements, essentially, he made on two days. October 9, 2008, on his bankruptcy petition, and November 4, 2008, at the first creditors' meeting. Basically, he said he concealed that he had sent some money home to Egypt to his family. Those are the bankruptcy fraud convictions. My main challenge and issue with Judge Wilson's opinion is that the Mandatory Restitution Act, section 3663, capital A, nowhere says, nowhere mentions that attorney's fees are awardable restitution. And this court held in 1992 in the Mullins decision that fees are not awardable under the discretionary act, 3663. And courts since then have interpreted 3663, 363A, basically the same, substantially the same respect. So in 1992, this court held in a published decision in Mullins that fees are not awardable. Consequential damages, the court said, such as attorney's fees, are not awardable. Now, nowhere since then has Congress amended either act to say that attorney's fees can be awarded. There are two rules of statutory construction that I emphasize in the briefs that I'd just like to mention that I think should guide this court in reversing the district court. One, there is no inherent judicial authority to award a particular loss as restitution. It has to be an express grant by Congress. This court has said that. Other courts have said that increasingly in recent years. We're going to narrowly look at the text. There's no implied authority. There's no inherent authority. It's purely statutory law. So that's one rule of statutory construction that is a problem for the government because nowhere do they mention attorney's fees. The second rule of statutory construction that is highly relevant here is the American rule. Attorney's fees are not awardable absent an express grant in a contract, which is relevant here, or in a statute, an express grant in a statute. This court has said that as recently as 2009. It's said that many times. So those two rules together are irreconcilable with this decision by the judge. I recognize the American rule, but we're dealing with a criminal case. So how does the American rule, which is typically applied in civil context, apply here? It still would guide Congress. Congress is still presumed to legislate against the background of common law traditional principles. And here we had two civil litigants in a bankruptcy action. Mr. Abdelberry, it wasn't I, but had a bankruptcy lawyer representing him. Jordan Oil Company had this Richmond firm, Sands Anderson, come down to represent him. So there are litigants in this bankruptcy action. And in the bankruptcy proceeding, Jordan Oil would not be entitled to recover its attorney's fees? In the bankruptcy action? Right. From the bankruptcy court? Right. Gosh, Judge, that's a good question. Well, I guess your point is, I think not. And if not, then that would appear to be an end-around, that inability to recover fees there. They're doing an end-around? Right. Okay. I think that's fair. Let me ask you about this unpublished Sprouse case where we, albeit in an unpublished opinion, granted a fire department suppression cost as part of restitution. That seems to me to be a consequential damage, and yet we decided that that was, in fact, covered under the act. I thought in the Sprouse case, and, Your Honor, I think that's an unpublished decision by this court. Ten years ago, the court said that consequential damages are not recoverable in the Sprouse case. So I think that's on my side. There is a case in Bryant that's unpublished that the government cites that is about very, very summary, which doesn't cite any of these principles we're talking about here, and awarded attorney's fees. All right. How do you distinguish that case? In that case, well, it's unpublished. In addition, the only objection raised, apparently, that I can tell from the face of the opinion, was on some state law grounds. They never raised an objection to any of these issues we're raising here. They never mentioned the Mullins. There's no mention of Mullins. It's just a summary opinion, and, frankly, that is a problem here. This is an under-litigated issue in a lot of areas, and it's just not the focus of a lot of in-depth case law today. Mullins, though, was rightly decided then, and it's rightly decided today. There are some circuits that disagree with the Fourth Circuit, and I think we've both identified those in the brief, but I will say that none of those grapple with what I see the main problem, and that is that Congress knows how to write a statute saying attorney's fees are recoverable. For example, Section 18 U.S.C. 2259 is a federal restitution regime. It's in the same title as ours, and it expressly says the victim can be awarded attorney's fees. That's 18 U.S.C. 2259. Well, here we're in 18 U.S.C. 363A, and they're silent. To me, that is compelling. I mean, the only inference I can draw from that is that Congress, when it wants to award attorney's fees as restitution, in one statutory scheme, they do. In ours, they don't. And so I don't think there's any other rational way to compare those two regimes. Yes, Your Honor. In Mullins' case, that was a voluntary action to recover property. Yes, Your Honor. In this case, it's involuntary on Jordan Oil's part, so they've got to protect their judgment in the bankruptcy court. Does that make any difference to you? It does not, Judge, again, because, again, I think we'd be rewriting the statute, which, of course, we're not supposed to do. That's up to Congress. If they want to, just like they did in Section 2259, say that attorney's fees are recoverable, they can grapple with that type of distinction. So I don't think it does. I mean, what Mullins said was that consequential damages such as attorney's fees are not recoverable. Here, the only evidence in the record is a victim witness statement from the oil company saying, we spent all this money seeking to recover our property. They recovered their property, which is what they did in Mullins. It's the same issue. The only difference between the two statutes really is this B4 section of 363A. 363A has two subsections, A and B. A defines who are the victims, what is a victim, what are the class of people that can even recover, have standing to petition for restitution. That's subsection A. That says people that are directly and proximately harmed. That's the class of people. That answers who can get in the restitution box and even petition. What Judge Wilson did was he looked at that and said, well, I think this Jordan Oil Company has been proximately and directly harmed because they had to litigate for a couple of years in bankruptcy court. Therefore, that's all I need to know. That's all I need to find. And I can award under subsection A. He's very clear about that. And with all due respect to the court below, that's a misreading of the statute because you have to go to B that tells you what is awardable. A just tells you who is a victim. Okay? Someone directly harmed. But to tell us what is awardable, there's a list, an exclusive list, one through four. And the only difference really between the two statutes is now we have B4, which is sort of the catch-all and says other expenses. Your position is that you can read B, that B is a limitation. Yes, Your Honor. I'm wondering why that can't be read as a minimum, that the judge in giving restitution shall require at a minimum these things as opposed to have been a limitation. Because, Your Honor, there's two rules of statutory construction I mentioned. First of all, there's no inherent authority and there's no express grant. I've always read that to mean this is what is awardable. So you would say if it's a minimum, you'd have to go to discretionary authority, and there is none. There is none. And secondly, the American rule that the presumption that Congress, when Congress wants to award fees, they do so expressly like they did in the other restitution regime, Section 2259, child pornography regime, Violence Against Women Act regime. Those regimes allow awarding of attorney's fees. That's nowhere on our list. So there's just no way to read the attorney's fees in there without rewriting the list. And finally, even if I were wrong on all that, assuming arguendo, that there is some statutory authority to award fees under B-4, in this case, we can't do that. Because in this case, Judge Wilson was very clear, the district court judge, sitting as trier of fact in resentencing, that he does not find these to be expenses. And to find them to be expenses, assuming arguendo, expenses could include fees, there's a nexus issue there, Judge. They've got to be incurred in the participation of Sands Anderson, the Richmond firm, would have to have incurred all these bills or billed them for work in the investigation or prosecution of the offense or attendance at related proceedings. My recollection is he expressly declined to base his opinion on B-4. Yes, because he found that there's absolutely, he can't find that. And that is a finding of fact not objected to below, and that's binding on appeal. So even if I were wrong in my statutory construction understanding, on these facts, on this case, B-4 is unavailable to the government because he found that they're not expenses. And there is no evidence, even aside from that finding in this record, that they did anything to assist the government. If you read the victim witness statement, all it says is we did battle in the bankruptcy court the civil proceeding. But there's no evidence they assisted the government prosecute or investigate Mr. Abdelberry. Yes, Your Honor. Is your contention that even under B-1 that restitution could not be allowed? That is my contention for a couple of reasons. First of all, they didn't argue that below. I'm not sure they've argued that in a brief. I don't think they've argued that in a brief. They argued, if anything, two things. A-1 and A-2, which the judge accepted and I think is clearly wrong, and then the B-4. I don't think they argued B-1 below. But in any event, Mullins is right on point again. We're back to Mullins because Mullins, they looked at B-1 under the voluntary statute. Unless I'm mistaken, it is word for word with our B-1 in the Mandatory Act. So this court has already looked at that. Finally, that B-1, Your Honor, talks about property and returning the value of property. The property here is their civil judgment. Jordan Oil Company's civil judgment for a quarter of a million dollars, and the attorney's fees aren't part of that property. So it doesn't fit on many levels. Well, what if you take the position that it's a diminution in the value of the property? I see my time is up, Your Honor. Can I have time to answer this question? Go ahead. Thank you, Your Honor. It is not diminution in the value of the property. In fact, they still have their civil judgment and interest clicking away at the judgment rate. It was never discharged from bankruptcy. It's not a diminution in the property at all. And finally, and I hate to keep coming back to this, if Congress had wanted to say that attorney's fees could be awarded under B-1, I think they would have said so expressly. And so that's part of the problem. They're asking this court to sort of imply and try to write attorney's fees into that list, and it's not there. Thank you, Your Honor. This concludes this portion of our hour. I appreciate your recognizing your red light was on. We get apparently to be an attorney you have to be colorblind, and I'm glad that you realized that the red light was on because most people apparently don't think, see it. All right. Mr. Mott. Please be seated. Please, the court, I am Joe Mott, and I'm an assistant U.S. attorney in Roanoke. I think the fundamental disagreement between Mr. Beers and I is the interpretation of the statute. So I'd like to tell you how the government sees this statute working out. Of course, it is a mandatory restitution statute, and under Section A-1 of 3663 Big A, it requires that the defendant make restitution to a victim of the offense. It's not discretionary, unlike 3663. Congress requires restitution to be paid. A-2 goes on to define what a victim is, and that's really at the core of this case because it defines a victim as a person directly and proximately harmed as a result of the commission of the offense. So it not only has to be an offensive conviction, but it has to be directly and proximately related to it. And Mr. Beers' argument kind of went on, well, then B, Subsection B goes on to state what is recoverable. We have a very different view on that because the government's view is that this statute requires restitution for harm. It doesn't specify attorney's fees, investigator costs. When you say this statute, are you referring to any particular section, or are you just saying this is a general purpose? 3663-A, the statute as a whole, requires restitution. As a general purpose, what? It requires restitution for any of the offenses listed in Subsection C of 3663 Big A. And I don't think there's any issue with the bankruptcy fraud in this case. Those counts are subject to this. So what's the purpose of Section B? B is more to define the process by which the court is to go about determining how much restitution. For instance, in personal injury, it specifies in Subsection B-2 to pay the necessary medical and related professional services, et cetera. And then in B-1, which I think Mr. Beers misspoke. We did argue B-1. That's really what's at issue in this case, Subsection B-1, that it's the greater of the value of the property on the date of the damage or the value of the property on the date of sentencing. So we view, and I think the appropriate view of the statute, is that that's really a methodology as opposed to an enumeration of that which may be recovered. So does your situation fall within the language of B-1? Yes, it does. And it's a little confusing because the property in this case, the value of the property, is the property that Jordan Oil expended in defending itself in this fraudulent bankruptcy proceeding. Would you just say that one more time? I just want to make sure I understand. Property is what? Property, and that's another thing that's somewhat confusing. It can be anything. It can be tangible, intangible for purposes of restitution, but the court has to put a value on it. In this case, the property is the funds that were expended for attorney's fees in defending the fraudulent bankruptcy proceeding. So you're saying property is synonymous with loss? No, and that's another distinction I want to draw because that's sort of the second part of Mr. Beer's argument is there's no loss. There's a distinction between amount of loss for sentencing guidelines purposes and value of property for restitution purposes. They're not always the same. It can be both narrower. For instance, the intended loss can be huge, but the actual value of property that the victim is out is somewhat smaller. Or it can be larger. There are cases, for instance, a fire is set, and this is drawn from case facts, but there's $248,000 worth of damages for co-conspirators. Some of the co-conspirators are only held liable for part of the amount of loss, but all of them can be ordered to pay restitution. But in that case, the damage is to the real property or the personal property. What I hear you saying is that the damage or loss here was to the attorney's fees or the money, not the judgment? Well, the harm to Jordan Oil Company arising out of this bankruptcy was the money that they spent on attorney's fees directly related, approximately caused by the bringing of this fraudulent bankruptcy proceeding. They could have had additional harm had the debt been discharged. Let me ask you this. I'm looking at B-1. Did the offense result in damage or loss or destruction of the judgment? Surely the word property means the same thing in B-1 as it means in A and B. I don't understand how you fit. It's the loss of money. I suppose that's an intangible personal property right. You know, we can go to extremes and think of, you know, if a defendant damaged DNA sequencing or something, the court would have to put a value on that property and its effect on the victim. Didn't the defendant or the victim in Mullins similarly lose the value of money, attorney's fees in that case? And we said you can't recover them. Yeah, and I think that's the point. The difference in that, and I went through great pains in our brief to distinguish that factually, but that was consequential. It occurred some year or so after the actual conduct that was criminal, and at some point it can turn into consequential damages. And that was really the issue at sentencing, were these attorney's fees directly related to the fraudulent offensive conviction or did they occur somewhere downstream? And that's a difficult task in many cases, but there's a well-developed law on proximate cause going back to train platforms, as I recall, from torts 101. Well, notwithstanding the position you're taking and the fact that the appellant said the judgment's still valid and it's earned an interest, nevertheless, at the end of the day, the value of that judgment is going to be reduced by the amount of the attorney's fees, which they had to involuntarily incur in order to protect their interest. So why wouldn't the property be the value of the judgment and its diminution by the attorney's fees? And I think the court recognized that and declined to order attorney's fees or the value of the judgment as consequential because they had occurred prior to the fraudulent bankruptcy proceeding, and then efforts to collect those were not intrinsically related to the fraudulent bankruptcy proceeding. Unlike the $84,000 that was ordered, that was all within the confines of the fraudulent conduct. Jordan Oil got a judgment in May. The bankruptcy's filed in October, and that's when the fraud commences. So the court declined to order restitution for that, and it didn't include it as relevant conduct in the sentencing either. So that's our view of the statute. If one is a victim as having harm, not loss, harm approximately caused by a defendant, then the court under B goes through the exercise of calculating how much that is, depending on whether it's property or personal injury. The second broad point is the defendant argues that the court found as fact that there was no loss, and that's based on, I think, three zeros found in the judgment and committal order under the criminal monetary penalty section of the J&C. And I will just say that I think that is a tortured construction of the court's findings, given everything that was found on the record as to the harm suffered by Jordan Oil. Moreover, I think it relates to loss and harm are two different concepts. Relevant conduct, loss for relevant conduct purposes, and the harm and pecuniary loss suffered by a victim are two different concepts. I think probably the J&C was reflecting sort of a relevant conduct concept as opposed to the harm for restitution purposes, and it's clear because that's the same section where the $84,000 is memorialized in the J&C. I have a few moments left, but I would end by saying these issues can come up in all sorts of factual settings, but I think the construction suggested by the government allows district courts to use well-tested concepts, such as proximate cause, to determine whether someone is a victim. And then if one is deemed a victim, then they go through the calculation of what is the value of the property that was lost.  And I expect as time goes on, there will be even more forms of property that, of course, will be called upon to value. And unless there are any other further questions. Thank you. Thank you, Mr. Mott. Mr. Beers, reply. If it pleases the court, I'd like to address Judge Floyd's questions concerning B-1. I think legally what the government is suggesting, and they did not suggest it below, that's clear. They're saying they're suggesting it now, but they certainly didn't below. But in any event, the United States District Court for the Eastern District of Virginia has grappled with that and said in a case that's cited in the briefs, United States v. Okun, O-K-U-N, from July 2009. It's unpublished, but here in Richmond. It said 363A explicitly states how direct damage has already been calculated, the value of the property on the date of loss, less any value returned to the victim prior to the entry of the restitution order, citing B-1B. The attorney's fees incurred, the court said, by the victim are not part of the lost property's value. Thus, under strict reading of the statute, have no place in the loss calculation. And I agree with that. But also, aside from that factually here, the government is now trying to, even though it didn't argue that section below, they're now trying to ask this court to sit as fact finder because Judge Wilson below never made a finding of fact anyway concerning B-1. He said explicitly he's not going to go to B. He's going to find it under A-1 and A-2, this sort of generalized idea that once you're a victim, it's doors open, which is a misreading, I respectfully suggest, of the statute. So there's no finding of fact anyway. So are you saying that any district court tasked with applying the statute can't stop at A-1, A-2, has to go down the list to see where the particular facts fit with respect to property loss, damage, et cetera? Absolutely, Your Honor, because that's the way the statute reads. A is just telling us what are the class of persons that can even petition or have standing, so to speak, to get restitution. B tells us that's the who question, the what question. What can they get? What is awardable is listed in B, 1 through 4. And again, we strictly construe these because there's no inherent or implied authority in general to award restitution. But when it comes to attorney's fees, that is something that I think is a black letter that Congress, when Congress departs from the general rule of not awarding attorney's fees, they do so expressly, like they did in 18 U.S.C. 2259, another restitution statute. And finally, in Mullins, again, the B-1B section, the B-4 with the expenses, the catch-all wasn't in the voluntary restitution statute. But the one that Judge Floyd has raised, B-1, about the diminution of property, that was before the court in Mullins under the Voluntary Act. As far as I can tell, it's word for word. So this court looked at that question and said fees aren't awardable under that. Mr. Mott then brought up the fact that the restitution order, the judgment in this case, says zero loss. I haven't addressed that, but let me do so in closing. That's important. What happened here is the first time. Assuming that I am wrong on all the law all the way down the line, there's a statutory precondition for awarding restitution. We all agree on that. There has to be a finding of fact by the District Court of actual loss. And there isn't, because here the judgment says loss, zero, zero. There's the finding of zero loss. So if there's a finding of zero loss, there ought to be zero restitution awarded. This is the second time Judge Wilson has done that. This came up the first time, and it was a big part of the argument the first time. Judge Wilson knows that. He told us he listened to the argument. He's aware of that. It was a huge issue, and it was remanded for him to look at a number of issues, and that was one of them. And he carefully went through and made changes to this final judgment order. There are lots of changes. And he once again found zero loss. So if there's zero loss, there can't be any restitution. But there was. He orally awarded $84,000, and there's a conflict between the written and the oral controls, doesn't it? I think, Your Honor, if there's a conflict between an oral sentence and a written sentence, the general presumption or rule is that the oral trumps the written. But I don't think we've got that here. What he said, he did say that he thinks that the $84,000 was directly and proximately incurred by Jordan Oil Company in the course of the bankruptcy proceedings. He did say that. He never said that they incurred $84,000 because of these three counts that we're talking about here. Count one, count 16, 17, 19. The allegation, and I think this Court's been clear about that, and the Fifth Circuit recently has been very clear that we need to look at the count of conviction and the temporal scope of the count of conviction as set forth in the indictment. That's De Leon, 728, F3rd, 500, 507. They collect cases on that point. What was he charged with? What was he convicted of on these three counts? Making false statements about sending money to Egypt on October 9, 2008, and November 4, 2008. When he filed his bankruptcy petition, he made a false statement. And then at the creditors' meeting, he made a similar false statement. He didn't acknowledge that he had been sending over the last two years $50,000 to $70,000 in total in a number of wire transfers. That's the only counts that we're concerned with on restitution. They didn't run up $84,000. There's no showing they ran up $84,000 dealing with those false statements. That's not the proximate cause of why they were in bankruptcy. The indictment makes clear the bankruptcy was caused way back when he started stiffing Jordan Oil, and they got a judgment against him, and then he ran up these half-credit card bills and became insolvent back months earlier. That didn't make him insolvent, these two false statements. So I think the court is right that there's no loss that's been proven to be attributable, that's connected to these two false statements in the course of the bankruptcy proceedings. In other words, they didn't render him insolvent. He was rendered insolvent because of other things earlier, but they don't have anything to do with the count of conviction. They would have been in bankruptcy anyway. That's obvious. This isn't a bankruptcy of about $50,000 that he may have sent two years earlier overseas. It's about the judgment to Jordan Oil and the credit cards. But we're not looking at that for restitution purposes. We're looking at only what he was convicted of doing wrong. So there is no loss connected, or at least no proven loss connected, with those three counts of conviction. Thank you, Your Honor.
judges: William B. Traxler, Jr., Albert Diaz, Henry F. Floyd